Your Honor, this case on the docket, proceeding to dash 13-0791, Beachville, D.C., Illinois, plaintiff's affidavit, D. Mark Easley, defendant's appellant. Arguing on behalf of the defendant's appellant, attorney, Ms. Amy L. Montgomery. Arguing on behalf of the defendant's affidavit, attorney, Mr. Marshall M. Stevens. Okay, Ms. Montgomery. Good morning, Your Honors. Good morning. Counsel, may it please the court, I am Jamie Montgomery from the Office of the State Appellant Defender. I represent Mr. Mark Easley, the defendant appellant. Before I begin my argument, I'd just like to briefly thank the court and counsel for agreeing to reschedule the argument. That is very much appreciated. We are here today because Mark Easley did not receive a fair trial. In fact, his case was bookended in unfairness. First at the beginning, when the court failed to ensure that the jurors understood and accepted the fundamental principles of a fair trial. And then at the very end of the trial, when the prosecutor unfairly shifted the burden of proof to the defendant. One of the very principles outlined in 431B. In its brief, the state first takes the untenable position that the court's 431B admonishments here were sufficient and not erroneous. But Illinois courts have held time and again, most recently our Supreme Court and People v. Belknap, that a trial court commits error when it does not ensure that the jurors both understand and accept. Except to be candid, that hasn't always been the rule. That's the way it's interpreted. Now, it should be an easy matter, I think, arguably, simply to say, as most of us did in the trial court, Mr. Smith, for example, do you understand and accept the following proposition? That's very simple. It doesn't take any longer to say that than saying do you have any difficulty. However, this court itself here in the Second District, and I know you're aware of the case, in the Atherson case said specifically on that issue that was sufficient. Difficulty passed constitutional muster. You're aware of that case? Yes. So how do we distinguish this situation from that case? Well, I think we distinguish it by the fact that the most recent decision is Belknap, and Belknap is the law. And Belknap very plainly states that you must ensure both. And in cases where the court has said do you have any quarrel with, which is not different than do you have any disagreement with. I would tend to agree with you, except cases have interpreted it as being different. Have they not? I am not aware of cases. Yeah, there are cases that say there's a difference between quarrel and difficulty. Difficulty encompasses an understanding of the principles. That's in the case of people versus Ingram, 409-009. So you can parse the words, but cases have parsed out a difference in the meaning of those phrases. Yes, and I'm aware counsel cited Ingram in his brief, and in my reply brief I noted that Ingram predates much of the cases cited in my case. And I think, therefore, the most current rule is what Belknap says, which is you shall ask both understand and accept, which as Your Honor noted is not that difficult or different than asking the jurors whether they have any difficulty with. Well, Belknap, was it Belknap's case? What was the specific request or question in Belknap? In Belknap, I can grab my case and look. I think it makes a difference. Yeah, sure. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.  Thank you. Thank you.  I'm going to ask some questions of you as a group. If you have an answer other than what's obvious, raise your hand. The defendant in this case is presumed to be innocent. The principle is one that is essential to our system of justice. Do you all agree with that principle that a person charged with a criminal offense is presumed innocent? If there's anyone here who doesn't agree, please raise your hand. The record reflects no hands were raised. It goes over the next principle and it says, again, if there's anyone here who can't accept that principle, please raise your hand. Goes over presumption of innocence and no inference to be drawn from the remaining silent. Is there anyone who has any quarrel with that principle of law? Again, raise your hand. The records reflect there are no hands raised at this time. The court found that the appellate court in that case found that that phrasing did not question whether or not the jurors understood. And there's other cases that say quarrel is different than difficulty. You recognize that? Yes. But I don't think that in this case that we have that quarrel and difficulty, it's really splitting hairs. And I understand there are some cases that have found that they're different, but asking somebody if they disagreed with or have any difficulty with really doesn't get at do you understand. I disagree that that is sufficient. Well, here's the question I have. Does the Supreme Court state, in any case you're aware of, you can only use the phrase understand and accept. If the trial defense does not phrase the question, do you understand and accept these principles, anything less is reversible error? No. Okay. You said something that I think I disagree with, and that is you said that the reason why we should follow Belknap, and correct me if I was understood, is because it is the most recent case, or it was more recent than the case of Justice Hudson's site. I'm not aware that as between different appellate court decisions that the date of the rendering of the disposition has any binding effect on any appellate court, even appellate courts where the decision was made in the same district. I would buy your argument or your claim if you were talking about Supreme Court decisions where the Supreme Court came up with a different decision, and it was the more recent one, and it conflicted with the prior one. But since we aren't required to follow appellate court cases, I don't see how, or I'm not aware of any authority that says that the more recent case is the one that we are bound by. I'm referring to the Belknap decision of the Illinois Supreme Court, Your Honor, in which they found this questioning also to be erroneous, and went into a discussion of what then is the analysis of plain error in this situation. Did they look to be plain error? No, they did not. They looked at the, and that's the heart of the issue here, because it is our position that this was undoubtedly error. I concede that this was not preserved. However, it is plain error under the first prong, and the question then becomes, as the Supreme Court in Belknap clarified, that the way that this is reviewed then is looking at all of the evidence in a common-sense manner in the context of the totality of the circumstances was the evidence closely balanced. Right, I mean, the first step, obviously, is we have to determine whether there's error in the first instance. If there isn't any error, we don't get into these other issues. Correct. But, you know, we had a case here in which the trial judge forgot to give any of the admonishments at all. The case went up to the Supreme Court, and they held that it was clearly error, but it was a structural error somehow, and the defendant ultimately, the conviction got affirmed. So I'm only used as a point out that even though it may ostensibly seem that if you don't do it exactly as written, it's error, it hasn't played out that way in the court system, even where the admonishments were not given. I think the case that you're referring to, I'm not aware of the name, but in that case, if there was a time when arguments were being made that this was structural error, and the in that case, the court found that it was not structural error, that's the second prong of the plain error analysis. The court has found that this can be analyzed under first prong, which is where the closely balanced comes in, and that's what we're asserting. So if in that case, if that was the only argument that was briefed by the appellant, was the only argument that was not raised. So I don't think that that case stands for a proposition that even where the judge doesn't say anything, that that's sufficient. The reason why I suggested or related what I did was I looked at your brief, and I couldn't find Belknap cited, so far as the Supreme Court is concerned, you cited to the appellate court decision. Yes, because the Belknap Supreme Court decision came out a month after I filed my original brief. The state cites... Well, I looked in your reply brief, and I didn't see it in that one either. Correct. So are you asking us to cite to additional authority? The state did cite to it in their brief, so it has been raised. So given that it is our stance that error occurred here, the evidence was in fact closely balanced. While this court did find below that, or I'm sorry, did find in the first appeal that the evidence was sufficient to support a conviction under a reasonable doubt analysis. Reasonable doubt analysis is not the same as a closely balanced analysis. We have to look at all of the evidence without giving any deference to the state's evidence. And here, as the court noted, this evidence that supported the defendant's conviction was that Pitts identified Mr. Easley as the shooter, Easley's arguably furtive behavior following the shooting, and then third, that Easley's mother had purchased a gun the same caliber which was used in the shooting, and a case for his mother's gun was found in his apartment, albeit empty. The court, however, did note that this last piece was weak evidence to support his conviction. But if we look at the totality of the evidence in this case, Pitts' identification was riddled with issues, and I admit that in the original appeal, your Honor, did find that the identification was sufficient in that case. However, if we're looking at the totality of the circumstances, Easley had just... I think the test is different. I mean, I have no quarrel with your proposition. Okay. What about your second issue, shifting the burden? Sure. I don't want to spoil your time just on that one. So after we begin the case without the proper admonishments, in his rebuttal argument, the prosecutor questioned why the defendant failed to call Stubb as a witness when he had, quote, well over a year to find him and bring him forward. He would have seen this version that his defense attorney, based on no evidence, gave you that the defendant was actually being shot at and missed while the bullets that were going towards him went into Pitts' body. Well, where is Stubb? Well, he still can't figure out where he is. And then the prosecutor concludes his argument with the reason we don't have the name of Stubb is because Stubb is a witness to this and Stubb isn't going to help the defendant because if Stubb was to come in and testify, he would testify what Pitts testified to is to testify truthfully. This commentary was wholly improper. In order for the prosecutor to legitimately comment on the defense's failure to call Stubb as a witness, there's a three-part test. The first is which they have to determine, they have to establish at trial that Stubb exists. The second is that he was under the control of the defendant. And the third is that he could throw light on a vital matter. Here, we know Stubb exists. He's pictured in the photographic stills from the surveillance footage. We know he can shed light on a vital matter. So that's going to come down to the control issue. Exactly. And the state's going to argue, I anticipate, not that I'm being psychic here this morning, that the defendant had Stubb's telephone number programmed into his cell phone. So that would essentially indicate he had some control over him and the state didn't. So how do you respond to that argument? My response to that is that the defendant did provide the state with all the information he had about Stubb. I believe that at some point during his testimony... He gave the state the cell phone number of Stubb? No, he did not. What he did was he was asked by one of the officers, the state says that he lied about not having the phone number. That's not correct. The officer asked him whether or not he knew the phone number. And he said, no. He said, it's in my cell phone. So the officers knew that it was in his cell phone, too. But there was... But no one saw it on the cell phone. How would the officer know that it was in his cell phone? He thought the cell phone was discharged and needed to be recharged. The defendant explained how he got in touch with him was by calling him on his cell phone that the number was in there. So the police knew that the phone number was in or on the phone, but didn't know what the phone number was. Right. And the defendant gave them the information about... May I finish my thought? I'm sorry. She wants to finish her thought. The defendant gave him... Gave them the information about where Stubbs, what he looked like, what car he drove, what corner he played on, played basketball on. That was all the information he had. And we know from the Krankel inquiry that happened after trial, after the remand, that defense counsel sent an investigator out to find Stubbs and was apparently unsuccessful. So I submit Stubbs was equally inaccessible to both parties here. I do have a final question. You're conceding that Stubbs' phone number was in the defendant's cell phone, but because the cell phone had run out, the battery had worn down and was not retrievable from the phone? Is that what you're saying? I am saying that because the state was also aware that it was in the cell phone, it was equally accessible to both parties. The fact that it was run down and the battery was run down and they couldn't charge it, I think does make it inaccessible to both parties or that both parties would be equally able to charge the phone and get the phone number out of it. There were, of course, problems with the charging as testified to. But the cell phone itself, the key to this, was really in possession of the defendant, was it not? His mother had it. Is that more accessible to the state or the defendant that his mother had the phone? I think the state, when they got the warrant to search his apartment and they could have subpoenaed his mother and gotten the phone too. What would be your position if the situation was different and the state police had a cell phone with a number in it, but they said they couldn't retrieve it and they didn't turn it over to the defense? What would your argument there be? Would you accept that, Principal Haley? We could have got the phone too. I probably would. Okay. The bigger problem here, however, is in addition to him not being available to either party, the state took it too far when the state then said not only would he not corroborate the defendant's story, he would affirmatively corroborate Pitts' testimony. There is absolutely nothing in the record to support such a comment that was unfair commentary that unduly shifted the burden of proof to the defendant. I'll save the rest for rebuttal. Thank you. Mr. Stevens. Good morning, Your Honors. Interesting argument. Why don't I start off by asking, do you have any questions? Other than what is your response to her argument, yes. Okay. I just wanted to, you know, do a lot of what I was saying again. Okay. I think this is going to, regarding the first argument, I did say that the question here was, does the term, do you have any difficulties with these principles that I've elucidated, cover, understand and accept? We know it's got to be understand and accept. That's clear, clear, clear. The question is, what kind of questioning? I believe it's built me up, says you don't have to use any particular language. Your Honors have pointed out that there are cases that say difficulty has been acceptable. So Belknap does not say you must specifically use the terms understand and accept, and if not, it's error. No. Does Belknap say that? No. Okay. No. The only thing I can add to that is, there's no claim of attorney ineffectiveness here. The attorney was there. The attorney has the opportunity to ask questions. The judge, I believe, was doing what he thought was correct, or she, I don't know if Robin is, he or she. Robin Stuckert is it? I'm sorry? Robin Stuckert. Yeah. She, you know, was trying to fulfill the rule. I remember, and correct me if I'm wrong, this came up just a little after I think Belknap was decided and, you know, the real distinction between, oh, yes, you have to make sure they understand and accept. I think, you know, the common practice had been, which is no excuse, of course. But, you know, they're there and they are, you know, trying to get an understanding of the jurors. And this is an important part of the trial. I mean, there's no doubt about it. I recall a discussion with Justice McClaren about the importance of eye-to-eye contact, you know, seeing the response as you go along. I think Belknap refers to the, they have to have the opportunity to respond. So it does give, you know, it does imply that you're, you know, you're not just passively, you know, checking boxes. You're really, you know, looking at the jurors. So this question, there was no issue about whether or not the trial judge gave his error, as we used to call it in managements. The question is, departing from the talismanic recitation of understand and accept, substituting the word difficulty is error. Really? That's the issue, isn't it? That's the defendant's claim. And how many cases say it's not? Did you cite five in your brief? I think so. I mean, I think you've got the list. What is your response to counsel's claim that it's one thing to suggest the absence of Mr. Stubbs' testimony didn't prove what the defense might claim, but it also couldn't prove what the state claimed it did, and therefore that was prejudicial? I didn't understand her argument to be that the state... I understood the defense argument to be broader than that. It's that the concluding comments of the prosecutor were, oh, the defendant has to prove himself innocent, essentially. I think that the prosecutor's comment was targeted on what you could expect Stubbs to say. That's a legitimate comment. I mean, that's the reason why, and as Adams says... Wouldn't it be proper to say we don't know what Stubbs would say, as opposed to take the affirmative position that if Stubbs were here, he would corroborate the state's evidence? Isn't that, like, maybe a step too far? I think it's a fair inference. He's got to say one thing or the other. He was there. But the fair inference only applies if he's got control. That's, I think, 101 or 105, that talks about if a witness is under the control of the attorneys, then you can assume that the evidence that was to be presented by that witness would be against. So you're arguing that the defendant controlled Mr. Stubbs, and therefore, the inference could be raised. Right. That's a first requirement, of course. I didn't quite see it bullet-pointed in that one case, that 1, 2, 3 thing. But that is the test. But to say it controls the witness, it sounds a little Machiavellian there. All it means is, who has control of the information to locate the witness? And here, the defendant did. He didn't... No, I don't think that's what it means. I'm sorry? I'm not sure that it relates to just information. It's... I'm sorry, I don't quite understand what you're saying. Well, based upon my experience in civil matters, it isn't necessarily who has knowledge of whether a witness exists or not, because whether or not they know where this person is doesn't necessarily mean that they control that person. Exactly. I don't know where President Obama is right now. You might. Therefore, you control him? No, no. No. I don't think so. So that's the point I'm making. Knowledge of whereabouts doesn't necessarily mean that you control that witness, because even if you knew his whereabouts, it doesn't necessarily... You don't come up with the conclusion or the presumption that if I know where he is, then I control this person and I can get him to trial. No. You can... You might make some argument that is rather oblique and ambiguous and vague, but for purposes of an instruction that says that you can do what you're suggesting, I suggest that's rather far-fetched. Okay. I think that cuts against the defendant, because the defendant is saying that you have to be able to control it, and I think I agree with everything you just said. Knowing generally where a witness is, he's in the vicinity of these streets when they're playing basketball isn't really telling the police so that they have an equal ability to find the witness. Whatever this is, this is the ability to find the witness. I think that's what the Supreme Court was talking about when they said, control the location of. I believe it was the exact phrase they used. Control the locating of, you know. Point is, the defendant had the phone number, and if the defendant wanted to get Mr. Stubbs into court, he could have. But I have contacts on my phone that I know their number, except they're unfortunately deceased. So, you know, unless you think I'm a necromancer, I don't have control over these people. So knowledge doesn't infer control. It doesn't in this case. No, it doesn't. Control infers control. Um... I think that if you look at the cases like Adamson and all the ones that we cited, you could say the same thing about the relative ability of the defendant versus the state, whatever control means. I think that the Supreme Court, in using that phrase, simply meant who has the ability to contact the witness. Well, unless you're going to say that battery charges are never, uh... filed against police officers, only against private citizens, then I might buy your argument. But in this case, the police could have actually charged the battery if they wanted to. Just as, I mean, is there some evidence that indicates that the mother had a non-universal, unique battery charger that was the only one on Earth that could charge that battery? All we know is what the defendant said about charging the battery of a phone that was in the mother's possession that I don't know that the police knew of prior to the time of trial. And he told... Well, I thought that she said, Ms. Montgomery said, that the police officer knew that the number was on the phone and that the phone was discharged. Is the police officer not capable of extrapolating that and coming to the conclusion that if he charged the phone that maybe he might actually be able to get the number? I noticed that she said that, too. You think that that's not consistent with the record? You're going to have to check the record if you find that to be a salient point. My understanding was that this is something that came about for the first time at trial. There's a phone? Oh, yeah, that's funny. Let me ask you a basic question. Was there an objection to the state's opposing argument? No. There was not? I don't think so. I'm confused. I'm getting a little confused now. But wouldn't it be important? Not contemporaneously. Your position is there was no objection to this? I don't think so. We'll ask your opposing counsel. She would know, I'm sure. What about her argument that, yeah, even if you get over the threshold issue that the burden can shift under appropriate circumstances, the prosecution basically, in trying to fall within this exception, went too far and sort of created evidence or made up an interpretation of what Stubbs would have said. What's your response to that? Well, I think we're getting back to what Stubbs would say. Basically, he said, Stubbs would agree with us. Otherwise, he wouldn't agree with the defendant. Was that proper? Yes. Why? I think it's natural implication that flows from it. Stubbs, you know... If... If... Well, there's that general rule that talks about, well, you know, there's an assumption that it would be favorable, let's say. I think it applies to civil to the one side. But this is a criminal case. I mean, isn't that a concern at all? Uh... Let's see. Let's see. Let's see. I think, um... There's one case that said something about that. Did the state say, yeah, he'd be favorable and here's how he'd be favorable? Um... Yeah. I mean, really? How else? I mean, just, oh, there's a witness out here and to do nothing with it. What's the point of that? I mean... Okay, just let me understand this. Your position is that the defendant had control over this witness, knew where he was, knew how to reach him, could get him in. By golly, they were going to send a car and pick him up and bring him into court. Yes. And by the same token, after they'd done all that, he was going to come in and say, yep, that guy did it. And that's a fair comment? Doesn't that seem a little bit inconsistent? Inconsistent? The defendant has absolute control over this witness. The defendant has control over the witness. Mr. Stubbs. But Mr. Stubbs is going to come in and corroborate the state's case. I find that a little inconsistent. You may find it goes a little far, but it's not much further than I think would be a completely correct inference, which the Supreme Court seems okay with, which is that by not bringing him, the defendant knows that this person will not corroborate his story. That's one thing. I won't corroborate your story is a far cry from but he will corroborate mine. Possibly that's going too far. I don't think it's prejudicial. The second question, the first question is, is it error? Did he go too far? Frank, that's the first question. Isn't it going too far? I hesitate to say so without any case that actually says that. Well, let's assume for the sake of argument that we think so. What's your argument with respect to prejudice? With respect to prejudice? I mean that standing alone or are we in the plain error part now? However you wish to address it. Okay. Is the evidence closely balanced? I'm sorry? Don't at some point we inevitably get into the closely balanced issue? Oh, okay, so we're in the plain error. That's the facts. We've already gone over the facts. Wasn't this case, wasn't the evidence closely balanced? No. I say it's not. Was there an objection made when the state's attorney made that comment? I do not believe that there was a in-trial objection. I don't think it showed up in the post-trial motion but I simply don't remember. Okay. So your issue is it's okay under the general presumption of favorability to the state who to the other side didn't have the control the state can sort of say, yeah, he would have corroborated our side. That falls within the proper bounds of that presumption. It has to be your position, right? Yes. Okay, I guess we'll decide that. Yep. Do you have any further questions? I don't. Thank you. Thank you. Ms. Montgomery? Can you answer the burning question about the objection? Was there contemporaneous objection to this line of argument by the defense counsel? There was no contemporaneous objection. However, it was preserved in the motion for new trial. So the trial court below did have the opportunity to review this issue. I will agree that it was the trial counsel should have objected. However, I can understand that counsel may not have objected in hopes to not draw additional attention to this egregious comment. Here, and because You don't seem to raise the argument of ineffectiveness relative to this? No, I'm arguing that this was plain error. Okay. I mean, I argued that it was prosecutorial misconduct. It was a misstatement by the prosecutor. It was an inflammatory comment by the prosecutor. But because I will concede that it was not preserved sufficiently. Well, isn't plain error based upon the concept that counsel was unaffected for failing to remediate or ameliorate or mitigate the error that was committed by the other side? I mean, doesn't ineffectiveness of counsel go hand to hand? You'll find the term ineffectiveness of counsel on the same page of any brief where plain error is listed? I suspect that, yes, you could raise that as well. Here, I felt the prosecutor's statement was egregious enough that raising it on its own was sufficient. Well, if it's plain error, you're suggesting that there's presumptive prejudice? Yes, because the evidence here was very closely balanced. That's not presumptive prejudice? Well, here, under Belknap, the Supreme Court's decision, when we're looking at a first-prong plain error analysis of whether or not the evidence was closely balanced, we look at it because plain error relates to either structural or non-structural error. If it's a structural error, then the burden shifts to the state to prove that the defendant was guilty beyond reasonable doubt. If it's not structural, then you have to   not the evidence was very closely balanced. The fact that, as I started to say in my opening argument, Pitts' identification was not without its flaws. There was no other witnesses besides the two women walking by who identified someone who barely looks like the defendant as the shooter. They both only saw the shooter in profile. Both initially told the police that he had short hair or a buzz cut when in fact the defendant had shoulder-length braids. There is no gun ever found. The police searched, they found Mr. Easley behind in the alley hiding from the shooter shortly after the shooting. They searched for a gun there, found no gun. There was no gun along the path he took from where the shooting occurred. And even though there might not have been a gun found right at that moment and we can maybe understand that, there was a crime scene investigation crew there throughout the night and into the next day and no gun was ever found. Additionally, the state pointed to the fact that the defendant's mother's gun case was at his house. Now, the gun, everyone testified that the gun used in this shooting was a silver gun or a chrome gun. The mother's gun was black. So the fact that the gun case was found in his apartment means nothing. Additionally, the defendant had did all of this furtive behavior that the state said the defendant did is completely undercut by the fact that he was completely cooperative with the police. He submitted, as soon as he figured out that the person in the alley was a police officer, he came out, he submitted to a pat-down, he went with the officer back to the scene and provided his identification. When the officer said, I'm having trouble tracing your Ohio ID, the defense said, okay. The defendant went to his mother's house for Thanksgiving and heard while he was there that the police wanted to question him some more. So he called them back and said, hey, I heard you want to talk to me. I'm in Kentucky, here's my mother's address. I schedule a time to come meet you. Instead, the police sent somebody down to arrest him there where he was questioned, but there's no evidence of the questioning because it wasn't recorded. Now, he then comes back and when the police get a warrant to search, he submits to a police officer and he says, oh, no, no, this is my correct address. These are not the actions of somebody who's guilty. Any possible inference of furtive behavior is completely undermined by that. And I just want to touch very briefly if I might on the question about control. Um, as your Honor's were noting, the fact that you have a phone number for somebody doesn't mean you have access to them. It's entirely possible. No, it doesn't necessarily, no. Access and control are not the  And that might mean that you have access because in some instances access is filtered. Correct. I just, what I meant to say was that I agree with your position that the defendant, whether or not he, whether or not he had access to the phone and based on the information that his attorneys had, they couldn't find him. And we don't know whether the state ever tried to find him. But he was equally unaccessible and out of the control of both parties here. Which is why the prosecutor was completely unaccessible  of the control of both parties. And that's why the state was extremely prejudicial for all these reasons and those presented in the brief. We asked this court to reverse the defendant's convictions and remand for no longer. Thank you. There will be a short recess. There are other cases on the call.